Richard T. Drury (CBN 163559)
richard@lozeaudrury.com
Rebecca Davis (CBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff Montero*
*and the Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| JUAN CARLOS MONTERO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LA DIOSA ENTERTAINMENT, INC., a California corporation, and GLENDALE ARTS, a California corporation.<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.     Plaintiff Juan Carlos Montero ("Montero" or "Plaintiff") brings this Class Action Complaint against Defendant La Diosa Entertainment, Inc. ("La Diosa") and Glendale Arts, Inc. ("Glendale") (collectively, La Diosa and Glendale are referred to as

"Defendants") to stop Defendants' practice of making unsolicited text message calls to cellular telephones and to obtain redress for all persons injured by their conduct. Plaintiff Montero, for his Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

2. Plaintiff Montero is a natural person and resident of the State of California, specifically in Orange County, California.

3. Defendant La Diosa Entertainment, Inc. is a corporation incorporated and existing under the laws of the State of California with its principle place of business in California. La Diosa does business in the State of California and in this District, and sends text messages to consumers in this District.

4. Defendant Glendale is a not for profit corporation, incorporated and existing under the laws of the State of California, whose entity address is 116 W California Ave, Glendale, CA 91203.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), a federal statute.

6. The Court has personal jurisdiction over Defendants and venue is proper in this District because both Defendants La Diosa and Glendale are registered to do business in the State of California, regularly conduct business in the State of California and in this District, their registered agents for service are located in this District, and a substantial part of the events giving rise to the claims asserted here occurred in this District.

## COMMON ALLEGATIONS OF FACT

**A.  Bulk SMS Marketing**

7. In recent years, marketers who have felt stymied by federal laws limiting

solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk messages cheaply.

8. Bulk text messaging, or SMS marketing, has emerged as a new and direct method of communicating and soliciting consumer business. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters. An SMS message is a text message call directed to a wireless device through the use of the telephone number assigned to the device.

9. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide and instantaneously.

**B.     Defendant La Diosa Transmits Text Messages to Consumers Who Do Not Want Them.**

10. Defendant La Diosa owns and operates both the Giggle Nightclub and the La Diosa Night Club.

11. For Defendant La Diosa to recruit consumers to attend its nightclubs and events, La Diosa has resorted to sending text messages to consumers who have not consented to them.

12. In sending these promotional text messages, Defendant La Diosa took no steps to acquire the oral or written prior express consent of Plaintiff or the Class who received the unsolicited text messages.

13. Defendant La Diosa made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

14. In sending the text messages at issue in this Complaint, Defendant La Diosa

utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant La Diosa's automated dialing equipment includes features substantially similar to a predictive dialer inasmuch as it has the capacity to make numerous text message calls simultaneously (without human intervention).

15. Defendant was and is aware that these above described text messages were and are being made without the prior express written consent of the text message recipients.

**C.    Defendant Glendale Arts Similarly Uses Bulk Unsolicited Text Messaging.**

16. Defendant Glendale Arts, operates the Alex Theatre.[1]

17. The Alex Theatre hosted the show "Dances of Peru" on November 7, 2015. Defendant Glendale Arts sold tickets to this show ranging from $25 to $65 per seat.[2]

18. On information and belief, as part of its marketing efforts, Defendant Glendale Arts by or through its agent sent text messages to consumers to promote the show Dances of Peru.

19. However, in sending these promotional text messages, Defendant Glendale Arts took no steps to acquire the oral or written prior express consent of Plaintiff or the Class who received the unsolicited text message.

20. Defendant Glendale Arts, made or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

21. In sending the text message at issue in this Complaint, Defendant Glendale Arts by or through its agent, utilized an automatic telephone dialing system. Specifically,

---

[1] http://www.alextheatre.org/about/about-the-alex

[2] http://www.alextheatre.org/event/la-diosa-presents-dances-of-peru-the-magic-of-folklore

the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant Glendale Arts or through its agent used an automated dialing equipment that includes features substantially similar to a predictive dialer inasmuch as it has the latent capacity to make numerous text message calls simultaneously (without human intervention).

22. Defendant Glendale Arts was and is aware that these above described text messages were and are being made without the prior express written consent of the text message recipients.

### D. **Plaintiff's Experience with Defendants La Diosa and Glenale Arts.**

23. On October 29, 2015, Plaintiff Montero received a text message from the short code 94253 which read "Obten un par de boletos GRATIS para celbrar HALLOWEEN en Giggle Nightclub ingresando a www.GigglesHalloween.net. Rply STOP 2 quit." In English this translates to: "Get a pair of free tickets to celebrate Halloween at the Giggle Nightclub. Enter at www.GiggleHalloween.net. Reply STOP to quit."

24. The website GigglesHalloween.net is registered to: La Diosa Entertainment, 6205 Woodman Avenue, Valley Glen, CA 91401.

25. Even though the text offered a supposedly free invitation, the text was made for a commercial purpose since the Nightclub's business relies on their food and drink sales of its entrants to compensate for their free entrance. It was plainly telemarketing.

26. Montero never consented either orally or in writing to receive text messages from La Diosa or from the Giggles night club. Montero was never presented with consent language indicating that he was agreeing to receive text messages on his cellphone with the use of an automatic telephone dialing system. Likewise, he was never provided any consent disclosure indicating that providing his consent to receive text messages was not

a condition, direct or indirect, of any sale. Furthermore, Montero has never attended any of Defendant's establishments.

27. Montero has been receiving unsolicited text messages from Defendant La Diosa promoting both the La Diosa Night Club and Giggles for approximately five years.

28. When Montero first started receiving these promotional text messages five years ago, he was curious as to how Defendant La Diosa obtained his number.

29. After the 2nd or 3rd text that he received five years ago, Plaintiff Montero replied "STOP," yet the promotional text messages continued. Over the next five years, he has replied "STOP" at least 5 times all to no avail.

30. Over the next five years, as La Diosa continued to send him text messages, Plaintiff also called Defendant La Diosa on several occasions to confirm that he would be removed from its promotional text message list. Defendant La Diosa's agents confirmed with Plaintiff each time that it would take his cellular number off of its list, yet he continued to receive Defendant La Diosa's promotional text messages—even receiving one as recently as November 2015.

31. Plaintiff Montero believes he has received over 20 text messages from Defendant La Diosa after requesting that Defendant La Diosa stop sending him such messages.

32. At no time did Plaintiff Montero consent to the receipt of text message calls from Defendant La Diosa, let alone providing prior oral or written express consent to Defendant La Diosa.

33. On November 2, 2015, Plaintiff received an unsolicited text message on his cellular phone from the shortcode 94253—the same shortcode from which he had been sent the La Diosa text messages—with the following message:

"DANCES OF PERU 2015! Este Sabado 7 de Noviembre en el Alex Theatre. Compra los majors asienos hoy en www.DancesofPeru.com Rply STOP 2quit."

34. Translated into English the text message stated: "Dances of Peru 2015! This

Saturday, November 7 at the Alex Theatre. Buy the best seats now www.dancesofperu.com. Reply STOP to quit."

35. When a consumer visits www.dancesofperu.com as instructed they are presented with a large image with three prominent logos, those of: Defendant La Diosa, Dances of Peru, and Glendale Arts.

36. On the DancesofPeru.com homepage is a statement that reads "Buy your tickets right away" with a hyperlink to "Buy Event Tickets." This links to a page on AlexTheatre.org[3] where the consumer can purchase tickets to the show at the Alex Theatre.

37. As such, it appears that the Defendants collectively sent text messages to promote events and their night club and at the Alex Theater.

38. Plaintiff never consented to receiving texts from La Diosa or the Glendale Arts, who operates Alex Theatre.

39. By making unauthorized text message calls, as alleged herein, Defendants have caused Plaintiff and similarly situated consumers actual harm, including interfering with the use and enjoyment of their cellphones. In the present case, consumers were additionally subjected to unsolicited text messages without a mechanism for making them stop—given the fact that Defendant La Diosa's opt out mechanism does not function properly.

40. In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

41. On behalf of the Classes, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class

---

[3] http://www.alextheatre.org/event/la-diosa-presents-dances-of-peru-the-magic-of-folklore

members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seek certification of the following two Classes:

> **No Consent La Diosa Class**: All persons in the United States who (1) received a text message from Defendant La Diosa Entertainment, Inc.; (2) on his or her cellular telephone (3) from the last four years through present (4) and who provided prior express consent in the same manner as La Diosa Entertainment claims that Plaintiff provided such prior express consent.

> **Replied Stop La Diosa Class**: All persons in the United States who (1) from the last four years to the present, received (2) on their cellphone at least one text message from La Diosa Entertainment, Inc., (3) replied "Stop" to the text message, and (4) thereafter received at least one additional text message to their same cellphone number beyond a message simply confirming the opt out, and (5) who did not reauthorize La Diosa Entertainment, Inc. to send them text messages after they replied "Stop."

> **No Consent Glendale Arts Class**: All persons in the United States who (1) received a text message from Defendant Glendale Arts, Inc. and/or their agents, (2) on his or her cellular telephone, (3) from the last four years through the present, (4) and who provided prior express consent in the same manner as Glendale Arts claims that Plaintiff provided such prior express consent.

40. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

Plaintiff anticipates the potential need to amend the class definition following appropriate discovery.

41. On information and belief, there are hundreds, if not thousands, of members of each of the Classes such that joinder of all members is impracticable.

42. There are several questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes members that may be answered in a single stroke include, but are not limited to, the following:

(a) whether Defendants' conduct constitutes a violation of the TCPA;

(b) whether Defendants utilized an automatic telephone dialing system to send text messages to members of the Classes;

(c) whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct;

(d) whether Defendants obtained prior express written consent to contact any class members;

(e) whether Defendants' text messages constitute telemarketing;

(f) to the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members;

(g) whether Defendant La Diosa honored requests to stop sending messages or whether it serially failed to honor such requests;

(h) whether Defendants should be enjoined from such conduct in the future.

43. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Classes are the same, resulting in injury to the Plaintiff and to all of the other members of the Classes, including the annoyance and aggravation associated

with such messages as well as the loss of data and temporary inability to enjoy and use their cellphones, as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other members of the Classes have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct of transmitting wireless spam. Plaintiff's claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Class, received unsolicited spam text message calls from Defendants. Plaintiff is advancing the same claims and legal theory on behalf of himself and all absent members of the Classes.

44. Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Classes. Plaintiff has no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

45. The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted, and/or have refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendants to discontinue sending unsolicited and unauthorized spam text messages to the public and to honor their opt-out requests. Likewise, Defendants have acted and fail to act on grounds generally applicable to the Plaintiff and the other members of the Classes in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

46. In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all customers throughout the United States who received an unsolicited spam text message from Defendants. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

47. Adequate notice can be given to the members of the Classes directly using information maintained in Defendants' records or through notice by publication.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227 *et seq.*)
### (On behalf of Plaintiff Montero and the No Consent La Diosa Class)

48. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49. Defendant La Diosa and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent La Diosa Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant La Diosa and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

50. These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the No Consent La Diosa Class to receive such wireless spam.

51. The messages were for advertising, commercial, and telemarketing purposes.

52. Under the TCPA and its implementing Regulations, such messages required that La Diosa obtain prior express written agreement, that "include[s] a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). La Diosa never obtained such express written consent prior to sending its text messages.

53. Defendant La Diosa has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant La Diosa's conduct, under section 227(b)(3)(B), Plaintiff and the other members of the Class are each entitled to a minimum of $500.00 in damages for each violation of the TCPA.

54. In the event that the Court determines that Defendants' conduct was willful

and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent La Diosa Class.

### SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227 *et seq.*)
### (On behalf of Plaintiff Montero and the "Replied Stop" La Diosa Class)

55. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56. Defendant La Diosa and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Replied Stop La Diosa Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

57. The telephone dialing equipment utilized by Defendant La Diosa and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

58. These text calls were made *en masse* and without the consent of the Plaintiff and the other members of the Replied Stop La Diosa Class to receive such wireless spam. Indeed, consent had been revoked by everyone since they each had responded "STOP."

59. The text messages to Plaintiff and the Replied Stop La Diosa Class were made after any consent had been expressly revoked by responding "STOP." This alone violates the TCPA as any subsequent messages that did not merely confirm the opt out were sent without any consent.

60. Additionally, Defendants' supposed opt-out mechanism is not cost-free. Among other things, it requires the transmission of data from the user's cell phone that results in a reduction of the user's allowable data. It also does not work, and requires the

user to spend time and energy tracking down someone at La Diosa Entertainment in attempting to get the messages to actually stop.

61. La Diosa or its vendor possesses data showing which persons responded with "STOP" yet continued to receive text messages that exceeded any allowable "opt out confirmation" permitted by the TCPA.

62. Based on such conduct, Defendant La Diosa has violated 47 U.S.C. § 227(b)(1)(A)(iii).

63. Accordingly, under section 227(b)(3)(B) of the TCPA, Plaintiff and the other members of the Replied Stop La Diosa Class are each entitled to a minimum of $500.00 in damages for each violation of the TCPA.

64. Additionally, because the messages steadily continue despite multiple requests that they stop, the violations are capable of repetition, even if Defendant La Diosa were to temporarily place them on hold.

65. In the event that the Court determines that Defendant La Diosa's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Replied Stop La Diosa Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227 *et seq.*)**
**(On behalf of Plaintiff Montero and the No Consent Glendale Arts Class)**

63. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

64. Defendant Glendale Arts and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Glendale Arts Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers,

and to dial such numbers, *en masse*, without human intervention.

65. The telephone dialing equipment utilized by Defendant Glendale Arts and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

66. These text calls were made *en masse* and without the prior express consent of the Plaintiff and the other members of the No Consent Glendale Arts Class to receive such wireless spam.

67. Under the TCPA and its implementing Regulations, such messages required that La Diosa obtain prior express written agreement, that "include[s] a clear and conspicuous disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8)(i). La Diosa never obtained such express written consent prior to sending its text messages.

68. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant Glendale Art's conduct, under section 227(b)(3)(B), Plaintiff and the other members of the No Consent Glendale Arts Class are each entitled to a minimum of $500.00 in damages for each violation of the TCPA.

69. In the event that the Court determines that Defendant Glendale Art's conduct was willful and knowing, it may, under section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Glendale Arts Class.

**WHEREFORE**, Plaintiff Juan Carlos Montero, on behalf of himself and the Classes, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Montero as the representative of the Classes and appointing his attorneys' as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendants to cease all wireless spam activities, and otherwise protecting the interests of the Classes;

3. An award of reasonable attorneys' fees and costs; and

4. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: January 19, 2016

JUAN CARLOS MONTERO, individually, and on behalf of all others similarly situated,

By: /s/ Rebecca L. Davis
Rebecca L. Davis

Richard T. Drury (CBN 163559)
richard@lozeaudrury.com
Rebecca Davis (CBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[continued on following page]

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300

Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman
(law@stefancoleman.com) *
Law Offices of Stefan Coleman, LLC
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: 877-333-9427
Facsimile: 888-498-8946

*Counsel for Plaintiff and the Putative Classes*

*pro hac vice* admission to be filed